UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 19-25094-CIV-ALTONAGA/Goodman

**CANDIDO VIYELLA**,

    Plaintiff,

v.

**FUNDACION NICOR** and
**MORGAN STANLEY SMITH
BARNEY, LLC**,

    Defendants.

_____/

## <u>ORDER</u>

**THIS CAUSE** came before the Court on Plaintiff Candido Viyella and Defendant/Cross-Claimant Morgan Stanley's Renewed Joint Motion for a Preliminary Injunction Against Proceeding in FINRA Arbitration [ECF No. 49], filed January 31, 2020. Defendant Fundacion Nicor ("Nicor") filed a Response [ECF No. 51] and supporting declaration and exhibits (*see* [ECF No. 50]), and Viyella and Morgan Stanley filed a Reply [ECF No. 52]. The Court has carefully considered the parties' written submissions, the record, and applicable law. For the following reasons, the Motion is denied.

### I.    BACKGROUND

This is an action to enjoin an arbitration initiated by Defendant Nicor against Plaintiff Viyella and Defendant/Cross-Plaintiff Morgan Stanley before the Financial Industry Regulatory Authority ("FINRA"). (*See* Am. Compl. [ECF No. 20] ¶ 1). The "FINRA is a self-regulatory organization established under the Securities Exchange Act of 1934 . . . with the authority to exercise comprehensive oversight over all securities firms that do business with the public." *Pictet*

*Overseas Inc. v. Helvetia Tr.*, 905 F.3d 1183, 1187 (11th Cir. 2018) (alteration added; internal quotation marks and citations omitted).

### A. Viyella's Amended Complaint and Morgan Stanley's Cross-Claim

Viyella filed a Complaint [ECF No. 1] on December 10, 2019 and the operative Amended Complaint on December 23, 2019 against Nicor and Morgan Stanley. Viyella states two claims for relief.

In Count I, he seeks a declaration that Nicor's claims against him and Morgan Stanley are not arbitrable under Rule 12200 of the FINRA Code of Arbitration Procedure. (*See* Am. Compl. ¶¶ 27–33). Viyella alleges Rule 12200 requires arbitration of a dispute where "(1) arbitration is required by agreement or requested by the customer; (2) the dispute is between a customer and a [FINRA] member or associated person of a member; and (3) the dispute arises in connection with the business activities of the member or the associated person." (*Id.* ¶ 28 (alteration added)). Viyella claims Nicor does not meet these conditions because (1) neither Viyella nor Morgan Stanley, Viyella's employer, has entered into an agreement to arbitrate disputes with Nicor; and (2) Nicor is not a customer of Viyella or Morgan Stanley.[1] (*See id.* ¶¶ 29–30).

In Count II, Viyella seeks an injunction barring the arbitration. (*See id.* ¶¶ 34–41). The Court readily dispenses with Count II, as that count does not state a claim for relief. Injunctive relief is a remedy, not a separate cause of action. *See Blaszkowski v. Mars Inc.*, No. 07-21221-CIV, 2008 WL 11408620, at *3 (S.D. Fla. Apr. 8, 2008) ("An injunction is a remedy potentially available only after a plaintiff can make a showing that some independent legal right is being infringed — if the plaintiff's rights have not been violated, he is not entitled to any relief, injunctive

---

[1] The Motion for a Preliminary Injunction also argues the dispute did not arise in connection with Viyella's or Morgan Stanley's business activities. (*See* Mot. 13–17).

or otherwise." (internal quotation marks omitted; quoting *Alabama v. U.S. Army Corps of Eng'rs*, 424 F.3d 1117, 1127 (11th Cir. 2005))).

The Amended Complaint alleges the basis for subject matter jurisdiction is 28 U.S.C. section 1331, because the claims at issue in the FINRA arbitration "may be read to allege violations of the federal securities laws" and thus present a federal question. (Am. Compl. ¶ 9). The Amended Complaint also alleges a basis for subject matter jurisdiction under 28 U.S.C. section 1332 because the parties are of diverse citizenship and the amount in controversy — namely, the compensatory damages sought in the FINRA arbitration — exceeds $75,000. (*See id.* ¶ 10).

Morgan Stanley filed a Cross-Claim [ECF No. 9] against Nicor on December 12, 2019, seeking similar relief. (*See id.* ¶¶ 21–31). In Count I, Morgan Stanley seeks a declaration that Nicor's claims are not arbitrable under Rule 12200. (*See* Cross-Claim ¶¶ 21–25). Morgan Stanley alleges Nicor cannot satisfy the requirements of Rule 12200 "because there is no written agreement between Morgan Stanley and Nicor requiring arbitration, Nicor was not a customer of Morgan Stanley . . . , and the dispute does not arise in connection with Morgan Stanley's business activities." (*Id.* ¶ 23 (alteration added)). In Count II, Morgan Stanley seeks an injunction barring the arbitration. (*See id.* ¶¶ 26–31). Like Count II of Viyella's Amended Complaint, Count II of the Cross-Claim does not state a claim for relief. *See Blaszkowski*, 2008 WL 11408620, at *3 (dismissing count seeking an injunction not premised on a separate cause of action).

Like the Amended Complaint, the Cross-Claim alleges a basis for subject matter jurisdiction under 28 U.S.C. sections 1331 and 1332. (*See* Cross-Claim ¶¶ 4–5). The Cross-Claim also alleges "this Court has subject matter jurisdiction because the claim arises from the same transaction or occurrence that is the subject of Viyella's [Amended] Complaint" (*id.* ¶ 6 (alteration

3

added)), namely Nicor's claims against Viyella and Morgan Stanley that it seeks to pursue in FINRA arbitration.

The Amended Complaint and Cross-Claim make the following factual allegations. Defendant Nicor was "[led] by" Nicolas Corcione Perez Balladares ("Corcione"), a "well-known real estate developer and construction entrepreneur" in Panama. (Am. Compl. ¶ 18 (alteration added)). "Corcione was desperate to 'park' his assets outside of Panama as those assets were at threat of being frozen by Panamanian regulatory authorities" because Corcione was under government investigation for various fraudulent activities. (*Id.* ¶ 19).

Corcione contacted Viyella, a Morgan Stanley financial advisor, about becoming a customer of Morgan Stanley. (*See id.* ¶¶ 17, 20; Cross-Claim ¶ 12). "Viyella and his staff coordinated Corcione's customer application, but Corcione was affirmatively rejected as a Morgan Stanley customer in late 2015 . . . ."[2] (Am. Compl. ¶ 20 (alteration added; emphasis omitted)). Morgan Stanley alleges it "determined to decline Nicor's account application in or about September 2015." (Cross-Claim ¶ 11). Morgan Stanley further alleges Nicor "never opened an account with Morgan Stanley" (*id.* ¶ 15), "never deposited any funds or securities with Morgan Stanley" (*id.* ¶ 16), and "never purchased any securities through or from Morgan Stanley" (*id.* ¶ 17).

In the meantime, Viyella's family acquired a hotel property in 2013 through a series of entities. (*See* Am. Compl. ¶¶ 15–16). Terrena Properties LLC, an entity wholly controlled by Viyella's wife, partially owned CFLB Management LLC, which partially owned CFLB Partnership LLC, which in turn owned the hotel property. (*See id.*).

---

[2] Viyella and Morgan Stanley appear to concede in the present Motion the application was neither accepted nor affirmatively rejected and argue the distinction is immaterial. (*See* Mot. 11).

To finance the construction of the hotel, CFLB Management issued promissory notes to "mostly foreign" investors. (Am. Compl. ¶ 14). Nicor purchased a promissory note issued by CFLB Management. (*See id.* ¶¶ 2, 17). According to the Amended Complaint, "[n]one of these foreign investors, including Nicor, were ever solicited by Viyella for investment in the [h]otel project in his role as a financial advis[o]r for Morgan Stanley." (*Id.* ¶ 17 (alterations added)). Corcione allegedly had been discussing potential investment opportunities with Viyella since 2011. (*See id.* ¶ 21).

Nicor allegedly suffered losses from its investment in the CFLB Management promissory note. (*See* Am. Compl. ¶ 2). Seeking recovery of those damages and other relief, Nicor initiated FINRA arbitration against Viyella and Morgan Stanley on October 18, 2019. (*See id.* ¶¶ 1–2; Crossclaim ¶ 18). Nicor also brought an action in state court against CFLB Management and CFLB Partnership relating to the promissory note. (*See* Mot., Ex. 2, State Ct. Compl. [ECF No. 49-2]).

### B. Nicor's Statement of Claim before the FINRA

After Nicor lost its investment on the CFLB Management promissory note, it initiated FINRA arbitration against Viyella and Morgan Stanley, alleging before the FINRA that Viyella, as a Morgan Stanley financial advisor and registered representative, induced Nicor to purchase a faulty promissory note, and Morgan Stanley violated its obligation to supervise its representative Viyella's activities. (*See generally* Mot. Ex. 1, Statement of Claim [ECF No. 49-1]). Nicor's Statement of Claim in the FINRA arbitration sets forth much of the same factual background as the Amended Complaint. (*See generally id.*).

Nicor sought to open an account at Morgan Stanley and expressed to Viyella its interest in doing so. (*See* Statement of Claim 4).[3] Nicor was familiar with Viyella because "Viyella is the financial advisor for many families in Panama." (*Id.*). In September 2015, a Morgan Stanley employee "who is part of Viyella's team at Morgan Stanley" emailed Nicor the papers Nicor would need to sign in order to open an account, including an International Account Application and Client Agreement, which Nicor signed and returned. (*Id.* 4–5). Viyella informed Nicor in October 2015 that its application was under review and had not yet been approved. (*See id.* 5).

According to Nicor, Viyella and his wife formed Terrena Properties as a vehicle to invest in a hotel property. (*See id.* 3). CFLB Management issued a promissory note for $1 million to Nicor in November 2015, approximately two months after Nicor attempted to open the account at Morgan Stanley and one month after Viyella advised Nicor its application had not yet been approved. (*See id.* 17–24, Ex. 1, Demand Promissory Note). Viyella sent Corcione text messages recommending he purchase the promissory note (*see* Statement of Claim 5–6), characterizing it as "the best option for you" and a "very good investment" (*id.* 5 (internal quotation marks omitted)).

Nicor claims Viyella engaged in "selling away, unsuitability, and fraud" in violation of the FINRA's rules (*id.* 2), and Morgan Stanley was "required to supervise Viyella's activities and is responsible for Viyella's violations of the FINRA [r]ules" (*id.* 8 (alteration added)). According to Nicor, the "FINRA has several [r]ules that address the violations by Viyella, and therefore Morgan Stanley." (*Id.* 8 (alteration added)).

As to its claim of selling away, Nicor alleges Viyella violated the FINRA rules prohibiting a registered representative of a FINRA member from participating in outside business activity without notice to the member firm or participating in a private securities transaction. (*See id.* 8–

---

[3] The Court uses the pagination generated by the CM/ECF database, which appears in the headers of all court filings.

9).  As to the unsuitability claim, Nicor alleges Viyella violated the FINRA rule requiring a reasonable basis that a recommended transaction or investment strategy is suitable for the customer based on the customer's investment profile.  (*See id.* 8).  As to the fraud claim, Nicor alleges Viyella violated the FINRA rules requiring "high standards of commercial honor and just and equitable principles of trade" and prohibiting the effecting of a transaction through a "manipulative, deceptive, or other fraudulent device or contrivance." (*Id.*).  Nicor claims Morgan Stanley is also liable for Viyella's unlawful activities.  (*See id.* 8, 12, 14).

Nicor alleges these violations as well as several other legal claims, such as breach of fiduciary duty, breach of a broker's duty to supervise and ensure compliance with firm and industry rules, negligent and intentional misrepresentation, and breach of contract and the covenant of good faith and fair dealing.  (*See id.* 15).  Nicor requests compensatory damages of $1 million and other relief.  (*See id.*).

### C. Viyella and Morgan Stanley's Motion for a Preliminary Injunction

On January 31, 2020, Viyella and Morgan Stanley (together, "Movants") filed their Renewed Joint Motion for a Preliminary Injunction Against Proceeding in FINRA Arbitration. Movants argue FINRA Rule 12200 does not mandate arbitration of Nicor's claims because (1) Nicor does not have an arbitration agreement with either Viyella or Morgan Stanley; (2) Nicor is not a customer of either Viyella or Morgan Stanley as he never had a direct transactional relationship with Morgan Stanley and his purchase of the promissory note was unrelated to Morgan Stanley's business activities; and (3) the dispute about the promissory note does not arise in connection with Morgan Stanley's business activities or Viyella's business activities in his capacity as a Morgan Stanley financial advisor.  (*See generally* Mot.; Reply).

Nicor insists (1) the Morgan Stanley Client Agreement it signed (or, alternatively, the FINRA Code of Arbitration itself) constitutes an agreement to arbitrate; (2) Nicor is a customer of both Viyella and Morgan Stanley because a customer is defined broadly under Rule 12200; and (3) the dispute arises in connection with Viyella's and Morgan Stanley's business activities because part of Morgan Stanley's business is its duty to supervise its representatives. (*See generally* Resp.)

## II.  LEGAL STANDARD

To obtain a preliminary injunction, a party must demonstrate "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that entry of the relief would serve the public interest." *Schiavo ex. rel Schindler v. Schiavo*, 403 F.3d 1223, 1225–26 (11th Cir. 2005) (per curiam) (citation omitted). "[A] preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly established the burden of persuasion as to the four requisites." *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998) (alteration added; internal quotation marks, citation, and footnote call number omitted).

## III.  DISCUSSION

Nicor asserts its claims are arbitrable under Rule 12200 of the FINRA Code of Arbitration Procedure, which requires a FINRA member or a person associated with a member to arbitrate when:

- Arbitration under the Code is either:

    1) Required by a written agreement, or

    2) Requested by the customer;

- The dispute is between a customer and a member or associated person of a member; and

- The dispute arises in connection with the business activities of the member or the associated person[.]

*Id.* (alteration added).

Morgan Stanley is a FINRA member, and Viyella is an associated person of Morgan Stanley. (*See* Statement of Claim 8). Although the parties do not have a written agreement to arbitrate,[4] Nicor initiated arbitration. Thus, to show a substantial likelihood of success on the merits of their claims for declaratory relief, Movants must demonstrate at least one of the following: (1) Nicor is not a customer for purposes of the first and second requirements of Rule 12200, or (2) the dispute does not arise in connection with the business activities of Morgan Stanley or Viyella.

### A. Customer

The Motion asserts Nicor is not a customer of Morgan Stanley or Viyella. (*See* Mot. 9–13). FINRA Rule 12100(k) broadly defines a customer as one who is not a broker or dealer. *See id.* Although the Rule provides no further guidance as to the definition of a customer, Movants urge the Court to define a customer as one who has a direct relationship with the FINRA member. (*See* Mot. 9–11; Reply 4).

Relying on three out-of-circuit cases, Movants argue Nicor is not a customer of Morgan Stanley because Nicor did not open an account with Morgan Stanley, purchase services from Morgan Stanley, or purchase securities for which Morgan Stanley received compensation. (*See*

---

[4] The Court rejects Nicor's argument that the Client Agreement it signed when it applied to open an account with Morgan Stanley constitutes an agreement to arbitrate. (*See* Resp. 9–10). As Movants state, the Client Agreement "never became a binding agreement of the parties" because "Morgan Stanley never accepted Nicor's application to open an account." (Reply 2).

9

Mot. 9–11). The cases Movants cite are not instructive because they involve factual situations fundamentally different from Nicor's claims before the FINRA. *See Goldman, Sachs & Co. v. City of Reno*, 747 F.3d 733, 741 (9th Cir. 2014) (finding the claimant was a customer of the FINRA member because it purchased services directly from the FINRA member); *UBS Fin. Servs., Inc. v. Carilion Clinic*, 706 F.3d 319, 327–28 (4th Cir. 2013) (same); *Wachovia Bank, Nat. Ass'n v. VCG Special Opportunities Master Fund, Ltd.*, 661 F.3d 164, 173–74 (2d Cir. 2011) (finding the claimant was not a customer of a FINRA member, although it negotiated with associated persons of the FINRA member to transact with the member's affiliate company, because the claimant did not have a brokerage services agreement with and had not received advice from the FINRA member).[5]

In contrast, Nicor claims Viyella engaged in "selling away," which "occurs when a financial advisor is involved in the sale of an investment that is not part of the products offered by the advisor's firm." (Resp. 3). Nicor asserts the dispute "is no different than the garden[-]variety selling away case" because "[h]ere, as in virtually every selling away case, the broker-dealer claims the customer did not have an account with it [and] no commissions were paid to it in connection with the transaction[.]" (*Id.* (alterations added)).

The Eleventh Circuit has ruled twice on the definition of a customer under facts nearly identical to the facts alleged here. In *Multi-Financial Securities Corporation v. King*, the claimant,

---

[5] *Goldman* and *UBS* cannot stand for the proposition that a claimant is a customer of the FINRA member only when it purchases services directly from the member, as Movants argue. (*See* Mot. 9–10). The courts in those cases answered the narrower question whether the specific services the claimants purchased from the FINRA members made them customers, not whether a customer must purchase services directly from the member or whether a customer must be an account holder. *See Goldman*, 747 F.3d at 739–41 (rejecting the FINRA member's argument a customer must be an investor or purchase investment or brokerage services specifically and finding the claimant was a customer because it purchased services generally relating to the member's FINRA-regulated activities, namely investment banking and securities business activities); *UBS*, 706 F.3d at 325–27 (same).

Rua King, made certain bad investments following the advice of a registered representative of IFG, a member of the National Association of Securities Dealers ("NASD").[6] *See* 386 F.3d 1364, 1365 (11th Cir. 2004). The court found King was a customer for purposes of arbitration because she was a customer of IFG's associated person, even though she did not have a direct transactional relationship with IFG. *See id.* at 1368–70. The court emphasized the rule defined a customer only as one who is not a broker or dealer, specifically rejecting limiting the definition of a customer to require a direct relationship with the NASD member because "[e]nforcing [that] limitation . . . would be tantamount to reading language into the Code that is conspicuously absent." *Id.* at 1368 (alterations added). In *Bornstein*, the court, relying on *King*, similarly concluded the claimants were customers of the NASD member because they were customers of the member's registered representative, who provided bad investment advice to the claimants. *See* 390 F.3d at 1344. Nicor argues *King* and *Bornstein* mandate the conclusion Nicor is a customer of Morgan Stanley because it is a customer of Viyella. (*See* Resp. 11–16).

Movants assert "it is . . . indisputable that Nicor was never a customer of Viyella[.]" (Mot. 13 (alterations added)). Nicor does, in fact, dispute this point. (*See* Resp. 15 ("It is beyond argument that Fundacion Nicor was a customer of Viyella." (citing cases))). Movants provide no further explanation to support Nicor's purported non-customer status either in their Motion or their Reply.

Instead, Movants argue *King* and *Bornstein* do not "warrant[ ] the denial of this [M]otion"

---

[6] The NASD and its Code of Arbitration Procedure are the predecessors of the FINRA and its Code of Arbitration Procedure. *See Busacca v. S.E.C.*, 449 F. App'x 886, 888 n.1 (11th Cir. 2011); *Deutsche Bank Sec. Inc. v. Simon*, No. 19-20053-Civ, 2019 WL 4864465, at *3 n.1 (S.D. Fla. Aug. 20, 2019), *report and recommendation adopted*, No. 19-20053-Civ, 2019 WL 4685876 (S.D. Fla. Sept. 26, 2019). The NASD rule providing the requirements for arbitration, discussed in *King* and *MONY Securities Corporation v. Bornstein*, 390 F.3d 1340 (11th Cir. 2004), is "not materially different from FINRA Rule 12200[.]" *Simon*, 2019 WL 4864465, at *3 n.1 (alteration added).

(Mot. 11 (alterations added)) for several other reasons: (1) unlike in *King* or *Bornstein*, Nicor actually applied to become a customer of Morgan Stanley, but the application was not accepted (*see id.*); (2) the FINRA's recent guidance on the definition of a customer under a different rule provides a customer "must have opened a brokerage account at the broker-dealer or purchased a security for which the broker-dealer received or will receive, directly or indirectly, compensation" (*id.* 12); and (3) *Pictet*'s holding that the dispute must relate to the business activities of the associated person in his capacity as an associated person similarly limits the definition of a customer, even though it does not deal with the customer requirement of Rule 12200 (*see id.* 12–13).[7]

Movants provide no legal authority supporting their argument the fact Nicor applied to open an account with Morgan Stanley means he is not a customer under *King* and *Bornstein*. And Movants' insistence the Court should follow the FINRA's guidance on the definition of a customer under a different rule fails to persuade. Again, the *King* court declined to limit the definition of a customer to require a direct relationship with the NASD member. *See King*, 386 F.3d at 1368. The Eleventh Circuit in *King* specifically noted other NASD rules provided more information about who is a customer but nevertheless determined it need not look to extrinsic evidence to decide whether King was a customer because the definition of customer as one who is not a broker or dealer was unambiguous. *See id.* at 1368 & n.3.

Finally, Movants' suggestion that *Pictet* limits the definition of a customer fails to persuade. Although Movants acknowledge *Pictet* "applies to the following section concerning business activities," they argue its requirement that the dispute must relate to the business activities

---

[7] Movants also argue the Court should not rely on *King* or *Bornstein* to deny the Motion because of "the line of cases from other jurisdictions that provide that a 'customer' is one who purchases goods or services from a FINRA member or has an account with a FINRA member." (Mot. 11). As discussed, these cases are inapposite.

of the associated person in his capacity as an associated person "also interplays with the definition of a 'customer.'" (Mot. 12). Movants state "common sense dictates that FINRA and its members could not have intended to require FINRA arbitration of any claim that arose out of activities of the associated person . . . ." (*Id.* n.3 (quoting *Pictet*, 905 F.3d at 1189; alteration added; internal quotation marks omitted)).

The business activities requirement already restricts the bounds of FINRA arbitration. As the *King* court noted in declining to limit the definition of a customer, "the Code's second requirement, that the dispute arise in connection with the business of the member, provides for the general connection between the customer's dispute and the member's conduct[.]" *King*, 386 F.3d at 1370 (alteration added). Thus, Movants' argument is unpersuasive. In any event, the Court concludes below that *Pictet* does not warrant holding the dispute did not arise in connection with Morgan Stanley's or Viyella's business activities.

### B. Business Activities

Movants next argue Nicor's dispute with them does not arise in connection with the business activities of Viyella or Morgan Stanley. (*See* Mot. 13–17). Movants cite *Pictet* for the proposition that Rule 12200 "was intended to bind a FINRA member's associated persons to arbitrate disputes only when the dispute arises in connection with the business activities of the associated person undertaken in his or her capacity as an associated person of the FINRA member." (*Id.* (emphasis omitted; citing *Pictet*, 905 F.3d at 1188)). To this point, Nicor responds *Pictet* is distinguishable because Nicor's dispute "has 'some connection' to Viyella's relationship with Morgan Stanley." (Resp. 19).

To elaborate, in *Pictet*, two investment trusts hired an independent asset manager and through the asset manager opened custodial accounts with Banque Pictet, a Swiss bank. *See Pictet*,

905 F.3d at 1185. The asset manager stole more than $1.8 million from the trusts' accounts, and the trusts initiated FINRA arbitration against eight former partners and several corporate affiliates of Banque Pictet. *See id.* One of those corporate affiliates was Pictet Overseas, Inc., a Canadian broker-dealer also owned by the eight partners. *See id.* Banque Pictet was not a FINRA member, but Pictet Overseas was. *See id.* at 1186.

The Eleventh Circuit held the claim was not arbitrable because the dispute did not arise in connection with the partners' business activities in their capacity as associated persons of Pictet Overseas.[8] *See id.* at 1188–90. Rather, the dispute arose in connection with the partners' business activities in their capacity as associated persons of Banque Pictet, and Banque Pictet was not a FINRA member. *See id.* at 1190.

Nicor argues this case is more factually analogous to *King*. (*See* Resp. 17–18). The Court agrees. "[I]n *Pictet*, the associated persons were not involved in the sale [and] it was an independent asset manager who engaged in the fraud[;]" while in *King* and in this case, "the associated person sold the product directly to the investor." (Resp. 18 n.12 (alterations added)). King's claim arose from the actions of the registered representative in giving advice regarding investments at a time when he was a person associated with a brokerage firm in the business of providing investment advice through its representatives. *See King*, 386 F.3d at 1370. Similarly, Nicor alleges Viyella persuaded it to purchase the promissory note from CFLB Management while

---

[8] Nicor contends *Pictet* is inapplicable (*see* Resp. 19 & n.13) because its holding was based in part on the section of FINRA Rule 12100(u) defining an associated person as "[a] sole proprietor, partner, officer, director, or branch manager of a member, or other natural person occupying a similar status or performing similar functions, or a natural person engaged in the investment banking or securities business who is directly or indirectly controlling or controlled by a member," *Pictet*, 905 F.3d at 1189 (alteration in original); while Viyella falls under the section defining an associated person as "[a] natural person who is registered or has applied for registration under the Rules of FINRA," FINRA Rule 12100(u)(1) (alteration added). Nicor states even if *Pictet* applies, its dispute arose in connection with Viyella's relationship to Morgan Stanley. (*See* Resp. 19).

Viyella was a financial advisor at Morgan Stanley. (*See generally* Statement of Claim; *see also* Resp. 2–3).

Movants point to a number of facts in an attempt to show Viyella was not acting in his capacity as a Morgan Stanley financial advisor when he suggested Nicor purchase the promissory note: Viyella has acknowledged he was not acting in his role as a Morgan Stanley financial advisor; Viyella communicated with Nicor about the promissory note through his personal cell phone and personal email; there were no communications between Nicor and Morgan Stanley about the promissory note; and Viyella disclosed to Morgan Stanley he established Terrena Properties as a "non-investment entity" (although Movants do not state Viyella disclosed the relevant entity, CFLB Management, to Morgan Stanley). (Mot. 14; *see also* Mot. for a T.R.O. Against Proceeding in FINRA Arbitration, Ex. B, Declaration of Candido Viyella [ECF No. 13-2] ¶ 9). Movants do not cite any legal authority to explain why these facts militate against the conclusion Nicor's claims arose in connection with Viyella's business activities in his capacity as a Morgan Stanley financial advisor. Indeed, the court in *King* found King's claim was arbitrable despite very similar facts: IFG's representative did not correspond with King on letterhead referring to IFG, provide her with any documents referring to IFG, or indicate IFG was involved with her investment; and IFG did not approve of the sale of the investment by its representatives, have any record of the purchase of the investment by or for King, or receive or disburse funds for this transaction. *See King*, 386 F.3d at 1366.

Nicor's claims arise in connection with Morgan Stanley's business activities because Nicor alleges Morgan Stanley failed to supervise Viyella. (*See generally* Statement of Claim; *see also* Resp. 16–20). King's claim, like Nicor's, was that the FINRA member failed to supervise its representative, and the Eleventh Circuit held "King's claim of negligent supervision satisfies the

[business activities] condition." *King*, 386 F.3d at 1370 (alteration added; citing cases). Similarly, the court in *Bornstein* held the claim the FINRA member violated its duty to supervise its representative was arbitrable because "supervision of associated persons arises in connection with the member's business." *Bornstein*, 390 F.3d at 1344–45 (citing *King*, 386 F.3d at 1370; other citations omitted).

Movants contend Nicor's argument that the sale of the promissory note was related to Morgan Stanley's business, taken to its conclusion, would mean "Morgan Stanley is required to arbitrate any dispute that involves one [of] its employees no matter how remote the dispute is from Morgan Stanley's actual business (i.e., providing investment services to its account holders)." (Reply 6–7 (alteration added); *see also id.* 4 ("Nicor's argument . . . could lead to scenarios where a FINRA member's membership alone would require arbitration." (alteration added; internal quotation marks and citation omitted))). Movants cite an example provided by the *Pictet* court in dictum to illustrate the conclusion the "FINRA and its members could not have intended to require FINRA arbitration of any claim that arose out of activities of the associated person that are unrelated to his or her relationship with the FINRA member." (Mot. 13 (quoting *Pictet*, 905 F.3d at 1189 (internal quotation marks omitted))). In the example, a partner of a FINRA member who is a real estate agent on the side cannot be forced to arbitrate a claim by a real estate client who was injured in a car accident while the agent and client were driving to see a home. *See Pictet*, 905 F.3d at 1189. "[T]he relevant business activity — acting as a real estate agent — has nothing to do with the real estate agent's status as a partner of a FINRA member." *Pictet*, 905 F.3d at 1189 (alteration added).

Nicor's claims are not so attenuated, and Movants' concern that Morgan Stanley would have to arbitrate unrelated disputes involving its employees is easily assuaged here. Movants fail

to show the dispute between the parties here did not arise in connection with Morgan Stanley's or Viyella's business activities because, as stated, Nicor alleges Viyella provided him investment advice while Viyella was employed as a financial advisor at Morgan Stanley, and Morgan Stanley failed to supervise Viyella. (*See generally* Statement of Claim). Movants' proposed limitation of the business activities requirement risks blocking claimants from initiating FINRA arbitrations on selling away or negligent supervision claims because those claims necessarily involve activity not explicitly sanctioned by the FINRA member.[9]

Because Movants fail to carry their burden as to the first necessary element to obtain a preliminary injunction, they are not entitled to relief, and the Court need not address Movants' arguments on the remaining elements for preliminary injunctive relief. *See Peter Letterese & Assocs., Inc. v. World Inst. of Scientology Enterprises Inc.*, No. 04-61178-CIV, 2005 WL 8167094, at *1 (S.D. Fla. May 27, 2005) ("[Movants'] failure to satisfy [their] burden as to any one of the elements will cause a motion for preliminary injunction to be denied." (alterations added; citing *United States v. Jefferson Cty.*, 720 F.2d 1511, 1519 (11th Cir. 1983))).

## IV. CONCLUSION

For the foregoing reasons, it is **ORDERED AND ADJUDGED** that Plaintiff Candido Viyella and Defendant/Cross-Claimant Morgan Stanley's Renewed Joint Motion for a Preliminary Injunction Against Proceeding in FINRA Arbitration **[ECF No. 49]** is **DENIED**. Given the Court's analysis and conclusions, the parties are directed, by no later than March 10, 2020, to file

---

[9] Movants also argue Morgan Stanley did not have a duty to supervise Viyella's activities concerning the hotel. (*See* Mot. 16; *see also* Reply 4 n.3). The Court need not decide whether Nicor's underlying claim succeeds on the merits to decide the question whether Movants have shown a substantial likelihood of success on their claims for declaratory relief regarding Nicor's ability to pursue its claims in FINRA arbitration. *See Morgan Keegan & Co. v. Shadburn*, 829 F. Supp. 2d 1141, 1144–45 (M.D. Ala. 2011) ("[T]he merits of [the underlying] claims are not material to the issue of whether Morgan Keegan must arbitrate those claims." (alterations added)).

a report advising whether the Scheduling Order's deadlines [ECF No. 24], including the scheduling of this case for an August 31, 2 020 trial, should be set aside and the case dismissed.

**DONE AND ORDERED** in Miami, Florida, this 28th day of February, 2020.

_____
**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record